UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

```
-------------------------------------------------------------x
WELLS FARGO BANK, N.A., as Securities          :
Intermediary,                                  :
                                               :
                  Plaintiff,                   :
                                               :
         v.                                    :
                                               :
SUN LIFE ASSURANCE COMPANY OF                  :
CANADA,                                         :
                                               :
                  Defendant.                   :
                                               :
                                               :
-------------------------------------------------------------x
```

**COMPLAINT**

Plaintiff Wells Fargo Bank, N.A., as Securities Intermediary (the "Securities Intermediary"), hereby files this Complaint against Defendant Sun Life Assurance Company of Canada ("Sun Life") and alleges, on personal knowledge as to itself and on information and belief with regard to all other allegations, as follows:

**NATURE OF THE ACTION**

1.      This case is the latest example of Sun Life's habitual refusal to pay death benefits on life insurance policies for which it has collected millions of dollars in premiums. Over the last several years, Sun Life has developed a pattern of collecting millions of dollars in premiums on insurance policies where Sun Life has no intention of paying the death benefit when the insured dies and, in fact, has every intention of challenging the validity of the policy only after the death of the insured. Indeed, rather than pay the death claims on the policies that have lined its pockets for many years, Sun Life files lawsuits in state and federal courts around the country

303438132 v1

asking those courts to refuse to enforce its policies while simultaneously seeking to keep millions of dollars in premium payments.

2.      In this case, approximately 13 years ago, Sun Life issued a $5 million life insurance policy (the "Policy") on the life of a Sarasota, Florida resident Mildred C. Sonnenschein-Mills (the "Insured").  The Insured held the Policy through a life insurance trust, which is a common ownership arrangement for valuable life insurance policies.  The Policy includes a standard two-year incontestability provision, which provides:  "After this Policy has been in force during the lifetime of the Insured for a period of two years from its Issue Date, we cannot contest it except for non-payment of Premiums."  The Policy's Issue Date was September 6, 2006, which means the Policy became incontestable no later than September 6, 2008.  The ownership of the Policy was eventually transferred to the Securities Intermediary on November 28, 2008 – more than two years after the Policy's inception and nearly three months after the Policy became incontestable.  The Insured has died and all the conditions precedent to payment of the death benefit (including, importantly, the payment of all premiums on the Policy) have been satisfied.  As a result, Sun Life has no right to refuse to pay the $5 million death benefit on the Policy now that the Insured has died or to challenge the Policy on any basis.

3.      Securities Intermediary has complied with all terms and conditions of the Policy, and has made significant premium payments from the time it acquired the Policy through the Insured's death.  Consistent with the Policy's terms, Securities Intermediary submitted a death benefit claim to Sun Life on April 26, 2019 and notified Sun Life of its obligation to pay the death benefit.  Sun Life has refused to honor its contractual obligation under the Policy and has failed to pay the $5 million death benefit on the Policy.  Accordingly, Securities Intermediary seeks a

303438132 v1

judgment adjudicating Sun Life in breach of the Policy or, alternatively, adjudicating Sun Life liable for the full $5 million death benefit plus interest under the doctrine of promissory estoppel.

## THE PARTIES

4.      Securities Intermediary is a national banking association organized and existing under federal law with its main office located in Sioux Falls, South Dakota, as identified in its Articles of Association.  Securities Intermediary maintains a principal place of business in California.

5.      Sun Life is a life insurance company organized and existing under the laws of Canada, with its principal place of business in the United States at One Sun Life Executive Park, Wellesley Hills, Massachusetts.

## JURISDICTION AND VENUE

6.      This Court has subject matter jurisdiction over these claims pursuant to 28 U.S.C. 1332(a)(1), as the matter in controversy exceeds the sum of $75,000, exclusive of interest and costs, and there is complete diversity between Securities Intermediary and Sun Life.

7.      The Court has personal jurisdiction over Sun Life because, among other things, Sun Life continuously and systematically conducts business within the State of Florida. Sun Life issues insurance coverage in Florida to Florida policy insureds, owners, and beneficiaries, including issuing the Policy on the life of the Insured that is the subject matter of this litigation. The application for the Policy was signed in Florida, the Insured and the Policy's owner had Florida addresses, the Policy was issued on a Florida insurance form, and the Policy's last annual statement states that it is governed by Florida law.

8.      Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(2) because the Insured was a resident of this District and because a substantial part of the events giving rise to the claims occurred in this District.

303438132 v1

## FACTUAL BACKGROUND

9.      Approximately 13 years ago, a Sun Life registered representative solicited Ms. Sonnenschein-Mills – a 76-year-old Sarasota, Florida resident – to buy a $5 million life insurance policy from Sun Life.  The Policy's Issue Date was September 6, 2006 and the Policy Date was October 6, 2006.  The Policy provided that it would become incontestable after two years, which means the Policy has been incontestable for nearly 11 years.

10.      The application for the Policy and the Policy itself provide that the Insured owned the Policy through the Mildred Sonnenschein-Mills Irrevocable Life Insurance Trust II, dated April 13, 2006 (the "Trust") – a common ownership structure for individuals like the Insured who buy valuable insurance policies.[1]  In addition to being the owner of the Policy, the Trust was also its beneficiary.  The Policy's Initial Premium and its Planned Periodic Premium amount were $198,650.  The Trust was responsible for paying the premiums.  The Policy was supported by a valid insurable interest under applicable law.

11.      In November 2008, more than two years after the Policy's Issue Date and approximately three months after the Policy became incontestable, the Trust sold the Policy.  The Trust did so in accordance with the Policy's express terms, which provided that "[d]uring the lifetime of the Insured, you may assign all or some of your rights under this Policy."  Around the same time it sold the Policy, on November 21, 2008, the Trust submitted an Ownership Change Request and a Beneficiary Change Request to Sun Life, which sought to transfer ownership of the Policy to Securities Intermediary and sought to name Securities Intermediary as the beneficiary of the Policy.  The Ownership Change Request and Beneficiary Change Request forms both provided

---

[1] According to subsequent correspondence, the Trust was named the Mildred Sonnenschien-Mills Irrevocable Life Insurance Trust II, dated September 14, 2006.

303438132 v1

4

that "[t]he requested changes will not become effective until the form has been received and approved by Sun Life Financial's U.S. Operations."

12.     On November 28, 2008, Sun Life confirmed in writing to Securities Intermediary that "[o]wnership of the policy … was transferred to Wells Fargo Bank, N.A. as Securities Intermediary in accordance with the Ownership Change Request" and "[w]e have also changed the beneficiary in accordance with Beneficiary Change Request Form."

13.     Securities Intermediary holds the Policy – as well as many other life insurance policies – on behalf of third-party investors.  The Uniform Commercial Code defines a securities intermediary as "(i) a clearing corporation; or (ii) a person, including a bank or broker, that in the ordinary course of its business maintains securities accounts for others and is acting in that capacity."  U.C.C. 8-102(a)(14).  Securities intermediaries frequently own life insurance policies for the benefit of third-party investors.

14.     In this case, although Securities Intermediary has owned the Policy since November 2008, the underlying economic ownership of the Policy was transferred from the original beneficial owner to the current beneficial owner on December 30, 2016.  The current beneficial owner acquired the Policy as part of a portfolio of policies – it did not acquire the Policy in isolation.  In its due diligence of the policy portfolio which contained the Policy, the current beneficial owner of the Policy reviewed the chain of title on the Policy, which included Sun Life's approval in writing of the ownership and beneficiary change in 2008.  The current beneficial owner also reviewed myriad representations by Sun Life over the life of the Policy that the Policy was valid and in force before agreeing to acquire the Policy (as part of a portfolio of policies) approximately 10 years after the Policy's origination and approximately eight years after the Policy became incontestable.

303438132 v1

5

15.     Securities Intermediary and the Policy's current beneficial owner were not involved in the original procurement of the Policy, so they relied on the fact that Sun Life's approval of the ownership and beneficiary changes – along with its myriad representations over the life of the Policy as to its validity through annual reports and other Policy-related correspondence – meant that Sun Life would not challenge the Policy when the Insured died, and instead, would pay the $5 million death benefit.

16.     The Insured died in Florida on April 6, 2019, and Securities Intermediary notified Sun Life of the Insured's death promptly.  On April 26, 2019, Securities Intermediary submitted a death claim to Sun Life.  Rather than pay the $5 million death benefit that was owed to Securities Intermediary under the Policy, Sun Life repeatedly made vague statements about the status of the payment, including "still in process," "no ETA available," and "call back next week." Sun Life has no intention of paying the $5 million death benefit, however, consistent with its well-established practice of challenging the validity of life insurance policies rather than paying claims on those policies.  *See, e.g.*, *Sun Life Assurance Co. of Canada v. U.S. Bank Nat'l Ass'n*, 2019 WL 2151695 (D. Del. May 17, 2019); *Sun Life Assurance Co. of Canada v. Wilmington Trust, Nat'l Ass'n*, 2018 WL 3805740 (Del. Super. Aug. 9, 2018); *Sun Life Assurance Co. of Canada v. Wilmington Trust Co.*, 2017 WL 978997 (D. Utah Mar. 13, 2017); *Sun Life Assurance Co. of Canada v. U.S. Bank Nat'l Ass'n*, 839 F.3d 654 (7th Cir. 2016).

## COUNT I

## BREACH OF CONTRACT

17.     Securities Intermediary incorporates by reference paragraphs 1 through 16 as if set forth herein at length.

18.     The Policy constitutes a valid, enforceable written contract that requires Sun Life to pay a $5,000,000 death benefit to Securities Intermediary.

303438132 v1

19.     Securities Intermediary, as the sole registered owner and beneficiary of the Policy, is entitled to timely receive the benefits due under the Policy.

20.     Securities Intermediary has complied with all applicable conditions of the Policy and all premiums due under the Policy have been paid.

21.     The Insured died on April 6, 2019 and Sun Life was provided with proof of the Insured's death shortly thereafter.  Sun Life was obligated under the Policy to promptly pay the $5,000,000 death benefit due under the Policy to Securities Intermediary, plus interest, as the Policy requires.  Sun Life has not paid the $5,000,000 death benefit, plus interest, as the Policy requires, and therefore has breached the Policy.

22.     As a result of Sun Life's breach of the Policy, Bank Defendant has been damaged in an amount of $5,000,000, plus interest.

## COUNT II

### PROMISSORY ESTOPPEL
### (IN THE ALTERNATIVE TO COUNT I)

23.     Securities Intermediary incorporates by reference paragraphs 1 through 22 as if set forth fully herein at length.

24.     Sun Life issued the Policy in exchange for the Policy's owners' agreement to pay millions of dollars in premiums, and Sun Life has received millions of dollars in premiums during the life of the Policy.  In exchange for those premiums, Sun Life promised to pay, and represented that it would pay, the Policy's owner the $5 million death benefit promptly following the Insured's death.  The Policy's owners agreed to pay millions of dollars in premiums in exchange for the right to receive that death benefit.  Sun Life's promise to pay, and representation that it would pay, the $5 million death benefit in exchange for significant premium payments was

303438132 v1

a material fact that is contrary to Sun Life's later-asserted position – namely, its refusal to pay the $5 million death benefit.

25. Sun Life reasonably expected to induce the Policy's owners to pay millions of dollars in premiums in return for Sun Life insuring the Insured's life and committing to pay the $5 million death benefit promptly after the Insured's death. Sun Life in fact induced such action because the Policy's owners continued to pay significant premiums to Sun Life in order to prevent the Policy from lapsing and to ensure that Securities Intermediary would ultimately receive the $5 million death benefit.

26. The Policy's owners – including Securities Intermediary and the third-party investors that beneficially own the Policy – reasonably relied on Sun Life's promise to pay, and Sun Life's representation that it would pay, the $5 million death benefit when the Insured died. The Policy's owners reasonably relied on Sun Life's approval of ownership and beneficiary changes on the Policy after Sun Life stated that the transfers would be effective after Sun Life "received and approved" those transfers, as well as Sun Life's multiple representations that the Policy was valid and in good standing. The third-party investors who acquired a beneficial interest in the Policy, which is held by the Securities Intermediary for them, innocently acquired the Policy nearly eight years after it had become incontestable, and believed in good faith that the Policy was valid and that Sun Life would comply with its promise to pay, and representation to pay, the $5 million death benefit when the Insured died.

27. By approving ownership and beneficiary changes, accepting millions of dollars in premiums over a 13-year period, making repeated representations to Securities Intermediary and the Policy's other, previous owners that the Policy was valid, and sending annual reports and other correspondence making clear that the Policy was in force, Sun Life made clear

303438132 v1

and unambiguous promises and representations that the Policy was valid, in force, and would be honored by Sun Life when the Insured died.

28.    Securities Intermediary and the third-party investors who acquired a beneficial interest in the Policy reasonably relied upon Sun Life's promises and representations in acquiring the Policy, continuing to make premium payments on the Policy, and keeping and maintaining the Policy for the last three years.    This reasonable reliance on Sun Life's representations and promises was to Securities Intermediary's and the third-party investors' detriment – and caused a change in position to the detriment of Securities Intermediary and the third-party investors – because they acquired the Policy and made premium payments on the Policy based on Sun Life's representations and promises that Sun Life would pay the Policy's death benefit in exchange for the premium payments and that the Policy was valid.

29.    The only way to avoid injustice would be for the Court to require Sun Life to live up to its promises and representations that the Policy is valid, enforceable, and incontestable, and pay Securities Intermediary the $5 million face amount on the Policy plus interest.

## PRAYER FOR RELIEF

WHEREFORE, Securities Intermediary prays that the Court enter judgment as follows:

(A)    Awarding Securities Intermediary damages for breach of contract (or, in the alternative, promissory estoppel) in an amount not less than $5,000,000 (representing the death benefit under the Policy);

(B)    Awarding Securities Intermediary its costs of suit, expenses and reasonable attorney's fees;

(C)    Awarding Securities Intermediary pre-judgment and post-judgment interest at the maximum rate permitted under the law; and

303438132 v1

9

(D)     Granting Securities Intermediary such other, further, and different relief as

the Court deems just and appropriate.

## JURY DEMAND

30.     Securities Intermediary demands a jury trial on all issues.


Dated:  June 10, 2019                                   Respectfully submitted,

                                                         */s/  Jonathan B. Morton*
                                                        Jonathan B. Morton, Esq.
                                                        Florida Bar No. 956872
                                                        jonathan.morton@klgates.com
                                                        **K&L Gates LLP**
                                                        Southeast Financial Center
                                                        200 S. Biscayne Boulevard, Suite 3900
                                                        Miami, FL 33131-2399
                                                        Telephone:     305-539-3300
                                                        Facsimile:     305-358-7095

                                                        Counsel for Plaintiff, *Wells Fargo Bank,*
                                                        *N.A.*

                                                        OF COUNSEL:

                                                        Harry S. Davis
                                                        Robert E. Griffin
                                                        SCHULTE ROTH & ZABEL LLP
                                                        919 Third Avenue
                                                        New York, New York 10022
                                                        (212) 756-2000

303438132 v1

10